Merrick, J.
The plaintiff, Source One Financial Corporation (“Source One”), holds a security interest as first lienholder on the title to a 2003 Mercedes ML 350 that was towed and held by the defendant, McCarthy’s Towing, Inc. (“McCarthy’s”), pursuant to the “private tow” statute, G.L.c. 266, §120D. Source One filed this action in the Hingham District Court against McCarthy’s for conversion of the vehicle and violation of G.L.c. 266, §120D and G.L.c. 93A, §§2 and 11. McCarthy’s counterclaimed for the towing and storage charges for which it claims a lien on the vehicle. After a bench trial, the judge found for the defendant, McCarthy’s, on the complaint and the defendant-in-counterclaim, Source One, on the counterclaim. Source One has appealed.
William Hallisey (“Hallisey), the owner of a rented residential property at 53R Main Street in Kingston, Massachusetts, was notified by the police on January 11, 2011 that arrests had been made at the property. Thereafter, Hallisey contacted McCarthy’s to see about towing two vehicles that had been left on the property. One of those vehicles was the Mercedes, owned by Ana Barreto (“Barreto”), on which Source One had a security interest. Barreto was not known to Hallisey and was not a tenant. It appears she may have been staying at 53R Main Street when she was arrested there along with others. The Mercedes was registered to her at 43 Samoset Street, Plymouth, Massachusetts. On advice from McCarthy’s principal, James A. McCarthy (“McCarthy”), Hallisey called the Kingston police department to see how he could remove the vehicles. Since 53R Main Street was not posted “no parking” or “no trespassing,” the police advised Hallisey to post a sign on each vehicle stating that it would be towed if not removed within 14 days. Notices to that effect were posted on the windshields of the cars, where they were visible to anyone entering the property. The notices were left on the vehicles for a month and were still there when the Mercedes was towed by McCarthy’s to its storage yard in Carver on February 15, 2011. In the meantime, relatives of persons arrested had come to 53R Main Street to remove property.
On February 15, 2011, McCarthy went to 53R Main Street to tow the cars and found them still present. While at 53R Main Street, he called the police with what McCarthy’s relies upon in this case as the notice to the police required by G.L.c. 266, *49 §120D. Apparently speaking to the Kingston police dispatcher, McCarthy reported that he was at 53R Main Street to tow the two vehicles, including the Mercedes in which Source One had a security interest. McCarthy identified Hallisey, the owner of the property, recited descriptions of the vehicles, including the registered owners, registration, and VIN numbers, and stated they were being taken to his lot in Carver. The dispatcher asked McCarthy if he would need a police officer present and McCarthy declined. The police did not request additional information or impose any other requirements for the tow. The information given was recorded in a police log introduced into evidence.
McCarthy’s then towed the Mercedes to its lot in Carver. It sent a notice including its own address on its form entitled “ALL POLICE ORDERED OR ACCIDENT TOWS” to the owner Barreto at the 43 Samoset Street, Plymouth address on the registration, stating that the car had been ordered towed by “Property Owner/Kingston P.D.” and specifying the towing charges and $35.00 per day storage charges accumulating. This was sent certified mail, return receipt requested on February 17, 2011. That notice was returned to McCarthy’s stamped “RETURN TO SENDER, ATTEMPTED - NOT KNOWN, UNABLE TO FORWARD.” McCarthy’s sent another updated notice on April 16, 2011, also returned with the same stamped notation.
Barreto made no payments to Source One on her car loan after a check was returned for insufficient funds in January or February of 2011, and Source One moved to repossess the vehicle. In early February, Source One got reports from relatives that Barreto had been arrested and was being deported and that she had been living at 53R Main Street in Kingston. After some telephone calls, Source One learned that the car had been towed by McCarthy’s. When Source One called McCarthy’s, it learned that in excess of $3,700.00 in charges were due on the vehicle. Source One’s employee stated Source One would pay the charges and requested an invoice. When Source One got the towing invoice noting “by order of Owner/Kingston Police,” it checked with the police and found that the police had not ordered a tow Source One then demanded that the vehicle be released without payment of the charges, taking the position that, if the police did not order the tow, McCarthy’s had no lien or right to hold the vehicle for payment of charges. McCarthy’s declined, and this action followed.
Source One’s complaint included three counts, each alleging that McCarthy’s was in possession without right of a vehicle of which Source One was entitled to possession, essentially conversion, and a count under G.L.c. 93A. McCarthy’s counterclaimed for the towing and storage charges. The trial judge awarded relief to neither party, finding for McCarthy on Source One’s complaint and for Source One on McCarthy’s counterclaim. Source One has appealed, arguing that McCarthy’s did not comply with the notice requirements of the statute under which it towed the car and that, in any event, its security interest has priority over any right of McCarthy’s to possession of the vehicle.
1. Source One argues that McCarthy’s did not comply with the notice requirements to the owner, it argues, of G.L.c. 255, §39A and G.L.c. 266, §29. Those statutes refer to the towing company’s notice obligations in cases of, respectively, police-ordered tows following an accident and police-ordered tows of a recovered stolen vehicle. Although McCarthy’s sent notices to the owner on the form it uses for the more common police-ordered tows and indicated on its invoice that the tow was *50 ordered by both the Kingston police department and the property owner, the tow here was not police-ordered. The tow, as the evidence established and the judge found, was a private “trespass tow” pursuant to G.L. c. 266, §120D, and we limit our analysis of the notice requirements to the violations of §120D, argued in Source One’s brief.
Under the police-ordered tow statutes, the police take possession of a vehicle and have it towed for public safety or law enforcement reasons and the owner of the vehicle must be notified. In a “trespass tow,” no police order is involved. The owner or person in control of a vehicle has left it on private property and presumably knows where it was left. Unlike the statutes governing police-ordered tows, G.L.c. 266, §120D, the “trespass tow” statute, does not include a requirement of notice to the owner, other than the pre-tow posting at the location where the vehicle was left. Rather, the “trespass tow” statute requires the owner of the real estate to notify the police. The purpose of the statute is to enable who left the vehicle to check with the police to find whether the vehicle has been stolen and, if not, by whom and to where the vehicle has been taken. Indeed, the statute does not call upon the police even to approve the tow, although the police may specify the manner of notice to them.
General Laws c. 266, §120D provides with respect to notice:
No person shall remove a motor vehicle which is parked or standing on a private way or upon improved or enclosed property unless the operator of such vehicle has been forbidden so to park or stand, either directly or by posted notice, by the person who has lawful control of such way or property. No vehicle shall be removed from such way or property without the consent of the owner of such vehicle unless the person who has lawful control of such way or property shall have notified the chief of police or his designee ... that such vehicle is to be removed. Such notification shall be made before any such vehicle shall be removed, and shall be in writing unless otherwise specified by such chief of police ... and shall include the address from which the vehicle is to be removed, the address to which the vehicle is to be removed, the registration number of the vehicle, the name of the person in lawful control of the way or property from which such vehicle is being removed, and the name of the person or company or other business entity removing the vehicle. ...
The requirement of a posted notice in §120D was satisfied by the posting of notice for a month on the windshield of the vehicle in a location visible to anyone entering the premises. What the statute requires further is that “the person who has lawful control of such way or property” give notice to the police of the specified particulars of the tow, including where and by whom the vehicle was taken. The objection in Source One’s brief to this notice seems to be that it was not made by “the person who has lawful control of such way or property,” that is, that the notice was given by McCarthy’s rather than Hallisey. Nothing in the spirit, letter, or intent of the statute prevents the delegation by Hallisey to McCarthy’s of the duty to give notice to the police.
2. Source One argues that, even if the tow were properly performed, McCarthy’s right to possession is not superior to its own under its security interest. Specifically, *51 Source One notes that the statutes governing police-ordered tows including G.L.c. 255, §39A and G.L.c. 266, §29, already mentioned, as well as G.Lc. 159B, §6B and G.L.c. 255, §25, governing vehicles brought in for repair, all use the word “lien” when describing the interest created. Section 120D of G.L.c. 266 does not use the word “lien,” but it provides that “[a] person lawfully holding a vehicle removed under the provisions of this section may hold such vehicle until the registered owner pays the removal and storage charges.” “The very definition of a lien is, a right to hold goods, the property of another, in security for some debt, duty or other obligation.” Arnold v. Delano, 4 Cush. 33, 38 (1849). See Lyons v. Bauman, 31 Mass. App. Ct. 214, 217 (1991). That is precisely the right of the tow company under §120D. Moreover, McCarthy’s interest in the vehicle here meets the three criteria specified in the statutory definition of “possessory lien” in G.L.c. 106, §9-333(a):
(a) “Possessory lien.” In this section, “possessory lien” means an interest, other than a security interest or an agricultural lien:
(1) which secures payment or performance of an obligation for services or materials furnished with respect to goods by a person in the ordinary course of the person’s business;
(2) which is created by statute or rule of law in favor of the person; and
(3) whose effectiveness depends on the person’s possession of the goods.
As G.L.c. 106, §9-333 (b) goes on to provide with regard to “Priority of possessory lien,” “[a] possessory lien on goods has priority over a security interest in the goods unless the lien is created by a statute that expressly provides otherwise.”
Source One itself is, of course, not liable for the towing and storage charges, and the judge properly found for it on McCarthy’s counterclaim. Source One, however, is not entitled to possession of the vehicle from McCarthy’s until the owner (or someone else) pays the accumulated charges.
Judgment affirmed.
So ordered.